(Judge Voorhees of the Fifth Circuit sitting in place of Judge Hale.)

STATE EX REL. HARVEY R. KEELER V. CLARENCE J. COLLISTER.

1. VILLAGE MARSHAL AND COUNCILMAN MUST BE CITIZENS OF UNITED STATES.

A person is ineligible to the office of village marshal or village councilman unless he is a citizen of the United States.

2. RIGHT OF PERSON TO HOLD OFFICE OF COUNCILMAN MAY BE TESTED IN QUO WARRANTO.

The right of a person to hold the office of village councilman may be determined by a court of chancery in a quo warranto proceeding, when such right is challenged on the ground that the incumbent is ineligible because he is not a citizen of the United States. Laning R. L. 3097 (B. 1536-612), making the council the judge and qualifications of its members, does not affect the jurisdiction of the court in such a case.

3. FOREIGNER MUST TAKE OATH TO SUPPORT FEDERAL CONSTITUTION AND TO RENOUNCE ALLEGIANCE TO FOREIGN STATE, ETC.

A foreigner cannot become a citizen of the United States simply by taking the preliminary oath that it is his *bona fide* intention to become a citizen, and to renounce forever all allegiance and fidelity to any foreign state, sovereignty, etc., and receiving a certificate of the taking of such oath; it is essential that, at the time of his application to be admitted, he also take an oath that he will support the constitution of the United States, and that he absolutely and entirely renounces and adjures all allegiance and fidelity to every foreign state, sovereignty, etc.

4. PERSON DISQUALIFIED AT TIME OF ELECTION TO OFFICE CANNOT THEREAFTER QUALIFY, ETC.

One who is disqualified from holding office at the time he was elected thereto and entered upon the discharge of its duties, because he was not a citizen of the United States, cannot thereafter qualify and hold the office by becoming a naturalized citizen.

QUO WARRANTO.

**C. L. Selzer,** for plaintiff:

Petitions in quo warranto prosecuted on behalf of the state by the attorney-general to oust an incumbent of an office need not set forth the name of the person claiming to be entitled thereto. *State v. Heinmiller,* 38 Ohio St. 101.

Quo warranto may be maintained against a person who assumes the exercise of the office of member of the council from a ward which has no legal existence or under an election held without lawful authority. *State v. O'Brien,* 47 Ohio St. 464 [25 N. E. Rep. 121]; *State v. Kearns,* 47 Ohio St. 566 [25 N. E. Rep. 1027].

34  O. C. C. Vol. 27

Cuyahoga County.

Limitations on right of city council to judge of the election returns and qualification of its own members under original Sec. 1679 (repealed 96 O. L. 96; see Lan. R. L. 3097; B. 1536-612). *State* v. *Darby*, 4 Circ. Dec. 124 (12 R. 235), affirmed by the Supreme Court; *Darby* v. *State*, 52 Ohio St. 611 [44 N. E. Rep. 1134].

Quo Warranto, the proper remedy in this case. *Harding* v. *Eichinger*, 57 Ohio St. 371 [49 N. E. Rep. 306].

As to citizenship. 6 Am. & Eng. Enc. Law (2 ed.) 15; *Dryden* v. *Swinburne*, 20 W. Va. 89.

Effect of election wherein leading candidate is ineligible. See *Gulick* v. *New*, 14 Ind. 93 [77 Am. Dec. 49]; *State* v. *Swearingen*, 12 Ga. 23; *State* v. *Giles*, 1 Chand. (Wis.) 112; *State* v. *Smith*, 14 Wis. 497; *Saunders* v. *Haynes*, 13 Cal. 145; *State* v. *Gastinel*, 20 La. Ann. 114; *Lanz* v. *Randall*, 4 Dill. 425 [14 Fed. Cas. 1131]; Dillon, Munic. Corp. Chap. 9, Sec. 135.

**Kerruish, Chapman & Kerruish,** for defendant.

## MARVIN, J.

Each of these cases, State ex rel. Harvey R. Keeler v. Clarence J. Collister and State ex rel. Harvey R. Keeler v. Caesar Collister, is a proceeding in quo warranto, brought on relation of the prosecuting attorney of Cuyahoga county.

The case against Caesar Collister sets out that the defendant is a resident of the village of South Brooklyn, Cuyahoga county, Ohio; that on April 6, 1903, at a general election held in said village, the said Caesar Collister received the largest number of votes cast for the office of village marshal and was declared to be duly elected to that office, and that, on May 4 of said year he assumed the office of village marshal of said village and still claims to hold such office and is in fact performing the duties thereof; that the entering upon the discharge of such duties and the assuming to be marshal of said village is a usurpation on the part of defendant, and the prayer of the petition is, that he be ousted from such office; that at the time of said election and at the time the defendant assumed to take possession of such office he had not the qualifications required by law for such officer, in that he was not then and there an elector of said village; that he was born in the kingdom of Great Britain a British subject, and that he has never become a citizen of the United States by naturalization.

The petition against Clarence J. Collister represents that the defendant at the election already spoken of received the largest number

State v. Collister.

of votes for the office of member of the village council for the village of Brooklyn and was declared to be elected to such office, and that, on May 4, 1903, he assumed the duties of such office and has ever since claimed to be such officer and is in fact discharging the duties of a member of such council; that he is a native of the kingdom of Great Britain, born a British subject, and has never become a citizen of the United States, and the prayer as against him is, that he be ousted from said office.

Neither of the defendants is eligible to the position which he assumes to occupy unless he is a citizen of the United States.

Laning R. L. 3098 (B. 1536-613) provides as to the qualifications of member of the council that:

"Every member of council shall be an elector of the city."

In Lan. R. L. 3248 (R. S. 1737; B. 1536-996) it is provided that:

"Each officer of the corporation * * * shall be an elector within the corporation."

In Lan. R. L. 3237 (R. S. 1727; B. 1536-984) it is provided that:

"A person who, at the time of an election for municipal offices, is an elector for county officers, and resides in the ward, or corporation, if there be no wards, in which he offers to vote, is a qualified elector."

Section 4, Art. 15 of the constitution of the state provides that:

"No person shall be elected or appointed to any office in this state, unless he possess the qualifications of an elector."

Section 1, Art. 5 of the constitution of the state provides that:

"Every white male citizen of the United States, of the age of twenty-one years, who shall have been a resident of the state one year preceding the election, and of the county, township, or ward, in which he resides, such time as may be provided by law, shall have the qualifications of an elector, and be entitled to vote at all elections."

In the matter of Clarence J. Collister a question is raised as to whether a court of chancery has jurisdiction to determine the right of the defendant to hold the office which he claims.

It is urged on the part of the defendant that the council and the council alone can determine who is a member of that body, and this is based upon Lan. R. L. 3097 (B. 1536-612), which reads:

"Council shall be the judge of the election and qualification of its members."

The question here presented was before the Supreme Court in the case of *State* v. *O'Brien*, 47 Ohio St. 464 [25 N. E. Rep. 121]. In that case the question was as to whether certain persons were members of the council of the city of Springfield, the claim being made on the part of

*Cuyahoga County.*

the defendants that they were members by virtue of an election, and that the council, and the council alone must determine whether they were properly members of the council. It was not a question of the contest of an election where one person was claiming as against another person the right to hold the office, but whether there was any office to be filled to which the defendant had been elected, but in discussing the question presented, Judge Williams, in an elaborate opinion, pointed out the distinction to be made between cases where there is a contest of one's election who claims to hold an office and where, for some reason, there was no authority for one's election to the given office.

Without stopping to read from this opinion, we think it clear that the court has jurisdiction in a case like the present to determine the right of the defendant to hold the office which he assumes to hold. Nobody is contesting his election, but the claim is, that under the law he was not eligible to the office; that he was not a citizen of the United States, and that therefore, whatever effect it might have upon the election of somebody else to the office, it could not be held by the defendant. As to the case against Caesar Collister no such question of jurisdiction arises, and holding as we do that we have jurisdiction in the case of Clarence J. Collister, we proceed to consider the two cases together.

The facts are these:

Caesar Collister was born on the Isle of Man within the kingdom of Great Britain on June 2, 1850. In March, 1867, he came to the United States, his parents not coming with him, and settled in West Virginia, where he remained until July, 1876. In 1868, he appeared before a court of record in West Virginia and made oath that it was *bona-fide* his intention to become a citizen of the United States and to renounce forever all allegiance or fidelity to any foreign prince, potentate, state or sovereignty whatsoever and particularly to Victoria, queen of Great Britain, whose subject he then was. He received from the court a certificate of the making of this oath, a copy of which is in evidence. It will be noticed that at the time this oath was taken he was less than twenty-one years of age. Upon arriving at the age of twenty-one years he, in good faith, believing that he had done all that it was necessary to do in order to make him a citizen of the United States, voted at an election held for public offices, and continued so to do until 1876, when he returned to the Isle of Man and there remained until 1889.

He then returned to the United States, and has lived here ever since, coming to reside in Brooklyn, where he now resides, about nine years ago. Ever since his return to the United States, including his nine

State v. Collister.

years' residence at Brooklyn, he has voted as a legal citizen and has done so in good faith, believing that he was a citizen. While he was living in the Isle of Man after his return there in 1876, the defendant, Clarence J. Collister, who is his son, was born there, he coming with his father to the United States in 1889. No claim is made—certainly none could be sustained—that the son is a citizen of the United States unless his father is such citizen, nothing ever having been done by him to secure naturalization, and we proceed to inquire whether the father is a citizen.

It is provided by Sec. 2165 U. S. Rev. Stat. (3 Bates' Ann. Stat., 4 ed., page 3770), as follows:

"An alien may be admitted to become a citizen of the United States in the following manner, and not otherwise:

"First. He shall declare on oath, before a circuit or district court of the United States, or a district or supreme court of the territories, or a court of record of any of the states having common-law jurisdiction, and a seal and clerk, two years, at least, prior to his admission, that it is *bona fide* his intention to become a citizen of the United States, and to renounce forever all allegiance and fidelity to any foreign prince, potentate, state, or sovereignty, and, particularly, by name, to the prince, potentate, state, or sovereignty of which the alien may at the time be a citizen or subject.

"Second. He shall, at the time of his application to be admitted, declare, on oath, before some one of the courts above specified, that he will support the constitution of the United States, and that he absolutely and entirely renounces and abjures all allegiance and fidelity to every foreign prince, potentate, state or sovereignty; and, particularly, by name, to the prince, potentate, state, or sovereignty of which he was before a citizen or subject, which proceedings shall be recorded by the clerk of the court.

"Third. It shall be made to appear to the satisfaction of the court admitting such alien that he has resided in the United States five years at least, and within the state or territory where such court is at the time held, one year at least; and that during that time he has behaved as a man of good moral character, attached to the principles of the constitution of the United States, and well disposed to the good order and happiness of the same; but the oath of the applicant shall in no case be allowed to prove his residence."

If Caesar Collister has ever been naturalized, he has been naturalized in some other way than provided in the statute hereinbefore quoted, notwithstanding the language of the statute that an alien may be naturalized in the manner provided by the statute, and not otherwise.

It is urged that the naturalization laws should be liberally construed, and that they have been so construed by the Supreme Court of the United States.

Attention is called to the case of *Campbell* v. *Gordon*, 10 U. S. (6 Cranch) 176 [3 L. Ed. 190]. A question in that case was whether one Wm. Curry, a native of Scotland, had ever been naturalized under the laws of the United States. He claimed to have been so naturalized in the district court at Suffolk, Virginia, October 14, 1795. The law in force at the time with which he was required to comply provided that he must declare on oath that he had resided two years at least in the United States, and at least one year in the state or territory in which the application was made, and that he renounced all allegiance and fidelity to every foreign prince, etc., and that he should prove to the satisfaction of the court that during his residence in the United States he had conducted himself as a man of good moral character, attached to the principles of the constitution of the United States, etc. The record of the court showed that he had taken the prescribed oath and a certificate thereof was furnished to him. It did not show that he proved character, and attachment to the principles of the constitution, as required by the statute. An employe of the office of the clerk of the court testified that before such certificate as was issued to Curry was given the court always required proof of character, etc., as required by the statute, and it was held that it would be presumed that such proof was made to the satisfaction of the court. Nothing further was held on this point, or which is applicable to this case.

The case of *Stark* v. *Insurance Co.* 11 U. S. (7 Cranch) 420 [3 L. Ed. 391], shows that John Philip Stark was a native of Great Britain; that he applied for naturalization and made the required oath, and that he was admitted to become a citizen. It did not show that he made any proof of character, but the court held that that would be presumed because of the order of the court that he was naturalized.

*Spratt* v. *Spratt*, 29 U. S. (4 Pet.) 393 [7 L. Ed. 897], simply holds that where the records of the court having jurisdiction to admit one to citizenship shows that he was admitted to citizenship, it would be presumed that he produced the proper evidence in court to entitle him to citizenship.

No case has been found, and it is believed that no case can be found in which it has been held that one may become a citizen without taking the oath provided for in the statute.

It will be noticed that in order that one be admitted a citizen he must take a different oath from that taken by the defendant, Caesar

Collister. He, having come to the United States before he was eighteen years of age, might, under the provision of the sixth subdivision of Sec. 2165 U. S. Rev. Stat. have omitted the oath which he did take and simply taken, after he had been here five years and made proper proof of that fact and of his character, etc., the oath in the second subdivision of the statute already quoted. That is, whether he came here at such a time as that he must take the oath which he did take, or not, it is expressly provided that:

"He shall, at the time of his application to be admitted, declare, on oath, before some one of the courts above specified, that he will support the constitution of the United States." This oath he has not taken. "And that he absolutely and entirely renounces and abjures all allegiance and fidelity to every foreign prince, potentate, state or sovereignty." This oath he has not taken, but simply has taken an oath that it was *bona fide* his intention to renounce such allegiance.

It is said that there is a distinction here without a difference as to this last obligation; that when one declares on oath that in good faith he intends to renounce and abjure allegiance, etc., it is in fact an allegation that he does so abjure allegiance and fidelity. The statute, however, makes the distinction, but especially does the statute require that before one can become a citizen he make oath that he will support the constitution of the United States. Defendant never having taken such oath, he has never become a citizen of the United States. It is not simply a case of where the records failed to show all that was done, but a case where, as a matter of fact, the oath has never been taken. It is not because of the weakness of the evidence that this man has done what is required to be done by him to become a citizen, but because of the conceded fact that these things have never been done by him.

We were cited in argument to Morse, Citizenship by Birth and by Naturalization, Appendix 228. We find nothing applicable to either of the cases here being considered, in this authority. We do find that where one is chosen to an office which, by reason of some disqualification existing at the time of the election he cannot hold, but which disqualification can be and is removed before the term of office begins, may hold the office. This is held in *State* v. *Murray*, 28 Wis. 96 [9 Am. Rep. 489], and other authorities cited, but we have no such case here.

It is true that both of these defendants have, since they assumed to enter upon the duties of their respective offices, been naturalized as citizens, so that they are now eligible to office, but these disqualifications were not removed until many months after they assumed to act in the official positions which they claim the right to hold.

Cuyahoga County.

Believing as we do that both of these men have at all times acted in the utmost good faith in relation to their citizenship, and they having been selected by their neighbors for the positions to which they believed themselves entitled it is matter of regret to the court that we are unable to find that they are entitled to hold the offices; but, under the law, it is clear that neither of these men at the time of the election mentioned, or at the time when they assumed to enter upon the duties of their several offices, was a citizen of the United States, and that, therefore, neither was an elector of the village of Brooklyn.

The judgment of the court is, in each case, that the incumbent be ousted from the office which he assumes to hold.

**Winch** and **Voorhees, JJ.,** concur.

---

## MUNICIPAL CORPORATIONS—STREET RAILWAYS.

[Summit (8th) Circuit Court, April Term, 1905.]

Marvin, Winch and Laubie, JJ.

(Judge Laubie of the Seventh Circuit sitting in place of Judge Henry.)